## STURTEVANT et al. v. UNITED STATES.

Circuit Court of Appeals, Ninth Circuit. December 3, 1929.

### No. 5880.

Marshall B. Woodworth and L. C. Pistolesi, both of San Francisco, Cal., and Thomas P. Boyd, of San Rafael, Cal., for appellants.

Geo. J. Hatfield, U. S. Atty., and Herman A. Van Der Zee, Asst. U. S. Atty., both of San Francisco, Cal.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

RUDKIN, Circuit Judge. The indictment in this case contained two counts. The first count charged a violation of section 301 of the United States Criminal Code (18 USCA § 492), in that the three defendants named did, on August 16, 1928, on waters within the admiralty and maritime jurisdiction of the United States, willfully and corruptly cast away and destroy the motorboat Ideal, to which two of the defendants belonged. The second count charged the three defendants with a conspiracy to violate the above section of the Criminal Code. A verdict of guilty was returned against two of the defendants, the third being acquitted, and, from the judgment on the verdict, this appeal was prosecuted.

It appears from the testimony that on the afternoon of August 15, 1928, the motorboat in question took on, at Point Reyes, on the California coast, a cargo consisting of 50 tierces of salmon, destined for Pittsburg, on the Sacramento river. The motorboat was thereafter lost, and on August 22, 1928, the appellant Peters, her master, made a report of the loss to his employer. The report stated that, about an hour out of Point Reyes, the motorboat struck a submerged object, possibly a floating pile or log; that she began to fill with water, and shortly thereafter listed to starboard; that the list caused a part of the cargo to carry away the starboard rail from just aft of midship to the bend in the stern; that several tierces of salmon went overboard; that the motorboat was then headed for the nearest land and struck on a rock before arriving at the beach, just north of Double Point; that, when the motorboat struck the rock, only about one-third of the cargo was on board; that the motorboat

filled rapidly with water, and the appellant climbed onto a large rock, where he remained all night; and that the cargo and motorboat were a total loss. His testimony on the trial tended to confirm this report, and there was no other or further testimony tending to show either the time or manner of the loss. It may be said that the jury was not compelled to accept the testimony of this witness, but, even if the testimony be rejected, there is nothing in the record to take its place. The testimony was contradicted, if at all, by the following facts and circumstances given in evidence at the trial: A witness for the government testified that, at 11:30 a. m. on August 16, 1928, he saw the Ideal off California City, some distance from Sausalito, going up the river, with another boat alongside. Another witness testified that he found or saw one of the tierces of salmon on the beach near Berkeley, on August 20, 1928. August 29, 1928, the appellant Sturtevant, under the name of Jones, ordered a car for preserved meat from an agent of the Northwestern Pacific Railroad, to be spotted at Sausalito. Another witness testified that he saw the tierces of salmon in an ice or cold storage plant at Sausalito on the Wednesday following August 15, 1928. On August 30, 1928, at Sausalito, Sturtevant and others, not including the appellant Peters, were seen loading the salmon from the icehouse or cold storage plant onto the freight car theretofore ordered by Sturtevant.

Such, in substance, was all the incriminating evidence in the case. We are not advised as to the theory of the government, but presume the theory to be that the cargo, stolen or embezzled by the appellants, was landed some place in the vicinity of Sausalito, and that the motorboat was then cast away or destroyed to conceal the theft or embezzlement. The jury might perhaps infer from the testimony that the cargo was stolen or embezzled by the appellants, for this would be only a reasonable inference from the facts and circumstances in the case, but such an inference, based on circumstantial evidence alone, will not support the further inference that the motorboat was cast away or destroyed in order to conceal the theft or embezzlement, because the rule is well settled that one inference will not support another. The theft or embezzlement of the cargo might, no doubt, disclose a motive for the destruction of the motorboat, but a person cannot be convicted of a crime on motive and theory alone, however plausible the theory may be, without other or further support in the evidence. A full and careful examination of the record has convinced us that there is nothing to the case beyond what we have stated, and that the testimony was wholly insufficient as a matter of law to either warrant the submission of the case to the jury or to support the verdict and judgment.

The judgment is therefore reversed, and the cause remanded for a new trial.